In the Matter of the Application of St. Basil's Church of the City of Utica, Petitioner, for an Order of Certiorari against John Kerner and Others, Constituting the Board of Appeals of the City of Utica, New York, Respondents.

Supreme Court, Oneida County, August 3, 1925.

Municipal corporations — zoning ordinance — certiorari to review proceedings of board of appeals of city of Utica in granting permit for erection of commercial garage in residential district — board of appeals, pursuant to General City Law, § 81, subd. 4, and zoning ordinance, § 18, subd. 5, after hearing, granted permit — said board has power to vary terms of ordinance and grant permit, where evidence shows denial will work unnecessary hardships on property owner — determination of board of appeals should not be set aside in absence of proof of abuse of discretion — certiorari dismissed — petitioner not party aggrieved.

The determination of the board of appeals of the city of Utica in granting a permit for the erection of a commercial garage upon premises located in a residential district of said city, should not be set aside in the absence of proof of abuse of discretion, and a certiorari order to review the proceedings of said board therein should be dismissed, where it appears that said board, pursuant to the provisions of subdivision 4 of section 81 of the General City Law and subdivision 5 of section 18 of the zoning ordinance of the city of Utica, after a hearing, granted said permit, since said board had power to vary the terms of the ordinance, where the evidence disclosed that there were practical difficulties and unnecessary hardships in the way of carrying out its strict provisions.

*It seems*, that petitioner, a property owner in an industrial district of property located across the street from that of the premises upon which the proposed garage is being erected, is not a party aggrieved within the meaning of section 18 of the zoning ordinance of the city of Utica.

Proceeding to review by certiorari the proceedings of the board of appeals under the zoning ordinance of the city of Utica, in granting a permit to construct a commercial garage within and upon the premises of Moushaty Brothers, located within a residence district in which the construction of garages of such character was prohibited.

*Merrill, Sisson & Quinn,* for the petitioner.

*Clarence E. Williams, Corporation Counsel* [*J. Herbert Gilroy, Assistant Corporation Counsel*], for the respondents.

*S. J. Capecelatro,* for Moushaty Brothers.

Smith, E. N., J.:

The petition of St. Basil's Church of Utica shows that it is a religious corporation organized under the laws of the State of New York and is the owner of premises known as St. Basil's Church, on which is a suitable church building used for religious purposes and located at the southeasterly corner of the intersection of Lansing street and Third avenue in the city of Utica, N. Y.; that the board of appeals of the city of Utica was duly constituted under and pursuant to the zoning ordinance of said city adopted and in effect October 10, 1924; that on August 26, 1924, one Mary Joseph was the owner of a lot located on the southwesterly corner of the intersection of Third avenue and Lansing street in said city, directly opposite and across the street from said church; that said lot has a frontage of seventy feet on Third avenue and eighty feet on Lansing street; that on said date said Mary Joseph obtained from the superintendent of buildings of the city of Utica a building permit for the erection on said lot of a commercial garage, at which time a commercial garage might lawfully have been erected upon said premises; that on the 15th of September, 1924, Abdella Moushaty, Tatala Moushaty, Cammela Moushaty and Harette Moushaty contracted to purchase said premises from Mary Joseph and acquired title to the same on the 3d of October, 1924; that the building permit issued to said Mary Joseph on August 26, 1924, expired December 31, 1924; that while said permit was in effect no work of any kind or nature had been commenced toward the erection of the structure for which the aforesaid permit had been granted, and that no contract for any work upon such structure was made until December 26, 1924; that on February 26, 1925, the superintendent of buildings of the city of Utica refused to grant a permit on the ground that the permit previously issued to Mary Joseph had expired and that at the time of the application of February 26, 1925, the premises of said applicants were in " B " residential zone of said city and that such a structure was prohibited within said zone; that from such refusal said Moushaty Brothers appealed to the board of appeals, and that such proceedings were had that on the 8th day of May, 1925, the board of appeals disapproved the action of the superintendent of buildings and allowed the Moushaty Brothers to construct the garage upon said premises in accordance with the plans and specifications of the original

permit. It is contended upon the part of the petitioner that the action of the board of appeals was illegal.

The return shows that on August 26, 1924, the time the permit was issued to Mary Joseph, the lot in question was in the area constituting unrestricted districts, in which residental, commercial and industrial buildings might be erected, altered, enlarged or used, which district was established by the common council of the city of Utica pursuant to an ordinance passed February 21, 1923, a copy of which ordinance accompanies the return; that thereafter and on or about September 15, 1924, said Moushatys entered into a contract to purchase said premises from said Mary Joseph, and subsequently and on the 3d of October, 1924, acquired title thereto by warranty deed; that subsequently to the transfer of said lot and on or about the 10th of October, 1924, the zoning ordinance now in effect became a law, whereby the board of appeals herein referred to was created and its duties defined; that by said ordinance the said lot was placed in " B " residential district, notwithstanding the fact that there was at the time a building permit lawfully and duly issued to said Mary Joseph and assigned by her to said Moushatys, outstanding and in full effect and force; that on or about the 26th of December, 1924, said Moushatys entered into a contract with one Rufino Menendez, a carpenter contractor, for the construction of a commercial garage, the original of which contract accompanies the return; that on the same day the said Moushatys entered into a contract with one Anthony Zanardo, a masonry contractor, for the performance of certain work on said garage, pursuant to a contract which is annexed and made a part of the return; that thereafter and on or about the 2d of January, 1925, said Moushatys requested an extension of the permit granted to Mary Joseph from the superintendent of buildings, and on or about the 26th of February, 1925, said Moushaty Brothers, the owners of the premises, in writing requested the superintendent of buildings to authorize the construction of a commercial garage on the aforesaid lot; that said superintendent of buildings refused to grant said permit on the ground that there was a permit granted to Mary Joseph August 26, 1924, which expired December 31, 1924; that attached thereto is an application for a certificate of occupancy and compliance, signed by said Moushatys, by their attorney, which is made a part of the return. There is also attached and made a part of the return the appeal from the ruling of the superintendent of buildings of the city of Utica, signed by Moushaty Brothers; also the superintendent of building's report to the board of appeals, and the ruling of the board of appeals, signed by the chairman thereof, at a meeting of the board of appeals held March 13, 1925,

at which the action of the superintendent of buildings in refusing said permission was approved on the ground that the board had no authority to make such change, said property being in " B " residential district, as set forth in the report of the superintendent of buildings. Thereafter and on the 28th day of April, 1925, the said Moushaty Brothers requested a rehearing, pursuant to article V, section 4, subdivision 2, of the rules of procedure of the board of appeals, copies of which rules of procedure are made a part of the return; and a rehearing was granted unanimously by the board of appeals; that at the regular meeting of the board of appeals held on the 8th day of May, 1925, Moushaty Brothers appeared personally and by counsel and filed the affidavit of Abdella Moushaty, which is marked " Exhibit 1 " and made a part of the return; that there was no appearance at any of the hearings above mentioned by anyone other than S. J. Capecelatro, attorney for the applicants Moushaty Brothers, and J. Herbert Gilroy, assistant corporation counsel, for the board of appeals; that two real estate dealers testified before the board of appeals that the lot in question belonging to said Moushaty Brothers would be worth not more than $2,000 to $2,500 for residential purposes, but that it was worth $4,500 if the lot in question was used for commercial purposes; that the chairman of said board and Messrs. Dolan and Kerner, members thereof, between April 28, 1925, and May 8, 1925, attended at and examined the premises in question and the property in proximity to the lot owned by said Moushaty Brothers, and, from a careful and thorough examination of the premises, as well as the information had and obtained by the members of the zoning board of appeals, and from their practical experience and personal knowledge of conditions in the city of Utica, the defendants concluded that there were practical difficulties and unnecessary hardships in the way of carrying out the strict letter of the provisions of the zoning ordinance of the city of Utica in this case, and thereafter, at the regular meeting of said board of appeals held on the 8th day of May, 1925, the defendants entered into a resolution, by unanimous action, as follows:

" Motion made by Mr. Kerner and seconded by Mr. Trosset, that the action of Superintendent of Buildings be disapproved, that party be allowed to construct garage upon the said premises in accordance with plans, specifications, permit and costs of the original permit granted by Superintendent of Buildings to Mary Joseph which permit was granted on August 26th, 1924, before the passage of the Ordinance, which permit was assigned to the applicants mentioned herein on Sept. 15th, 1924, before the passage

34

of the Ordinance and on that date contract was entered into for the purchase of the said premises from the said Mary Joseph; provided the applicant will submit plans as to setback lines and entrances approved by the Superintendent of Buildings."

There was filed with said board a map covering the property in question as well as the surrounding territory, which map is made a part of the return. The return also shows that the board of appeals, from the testimony and the record before them, including certain photographs attached, from their personal knowledge of the location of the property and their familiarity with the surrounding section and its classification, and in view of the fact that the other two corners, on one of which is located the property owned by the petitioner in this proceeding, are located in " D " industrial district, and in view of the fact that the lot in question was purchased in good faith by Abdella Moushaty and the other Moushaty Brothers for the purpose of constructing a commercial garage on said lot, which had theretofore been used for a storage stone yard,— by resolution and unanimous vote disapproved the action of the superintendent of buildings and directed that Moushaty Brothers be allowed to construct the garage on said premises, with the provision that the Moushaty Brothers would observe the established setback lines and that the entrances be approved by the superintendent of buildings, for the reason that the board of appeals considered that there were and still are practical difficulties and unnecessary hardships in the way of carrying out the strict letter of the provisions of the zoning ordinance in the specific case involved herein, and that their resolution is in harmony with the general purpose and intent of the zoning ordinance, to the end that the public health, safety and general welfare may be secured and substantial justice done.

The zoning ordinance of said city creates a board of appeals, in accordance with the provisions of section 81 of article 5-a of the General City Law (as added by Laws of 1920, chap. 743). Section 18 of said Utica zoning ordinance constitutes the board of appeals and makes provision governing its action, sets forth its jurisdiction and contains the provisions of the General City Law governing writs of certiorari to review its decisions. There are two provisions of this section 18 which are here for consideration. The first is as follows:

" Any person or persons jointly or severally aggrieved by any decision of the Board of Appeals or any officer, department, board or bureau of the city, may present to the Supreme Court a petition, duly verified, setting forth that such decision is illegal in whole or in part, specifying the grounds of the illegality. Such petition

must be presented to a Justice of the Supreme Court or at a Special Term of the Supreme Court within thirty days after the filing of the decision in the office of the board."

There are no technical questions raised; but the question which occurs to the court, first necessary for determination, is this: Is the petitioner a person aggrieved, within the meaning of the statute and the ordinance adopted in conformity therewith? The rules for hearings make no provision for notice to those who are not parties to the matter immediately under consideration. The language of the statute is very broad, and, while it seems something of an anomaly in procedure that a person not a party to a proceeding should have power to sue out a writ or order of certiorari to review the action of a public body with respect to the same, still, on account of the nature of zoning ordinances, and the fact that as time goes on parties not immediately affected by a particular proceeding may have purchased property within a restricted area for the reason that it was within such an area (even though to hold generally that any person aggrieved may appeal by way of a writ or order of certiorari may lead to a multiplicity of proceedings, and serious questions as to who is a party aggrieved may arise), I am of the opinion that this provision of the statute governing reviews should be construed liberally in this respect; the time limits within which appeal may be taken will tend to prevent a multiplicity of proceedings, and the public interest will in the long run be better conserved by a broad view. (*People ex rel. Broadway & 96th St. Realty Co.* v. *Walsh,* 203 App. Div. 468; *People ex rel. New York Edison Co.* v. *Willcox,* 207 N. Y. 86.)

But in this particular case the return shows that the property of the petitioner is situated in " D " industrial district, in which district public garages may be constructed. Its property is located just across the street from that of the Moushaty Brothers, and I am very doubtful as to whether, under such circumstances, the petitioner is a party aggrieved, even within the most liberal construction of the statute. Without passing definitely upon this question I will consider the merits of the matter.

The second provision of the Zoning Ordinance here under consideration is that part of it which defines the jurisdiction of the board of appeals. This is the provision:

" In specific cases the Board of Appeals may authorize by permit a variation of the application of the use, height and area districts herein established, in harmony with their general purpose and intent, as follows: (Sub. 5) Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this ordinance, the Board of Appeals shall

have the power, in a specific case, to vary any such provision in harmony with its general purpose and intent, so that the public health, safety and general welfare may be secured and substantial justice done."

In the decisions to which attention will later be called, it appears that this provision is identical with that governing the jurisdiction of the board of appeals in the Building Zone Resolution of the City of New York.

Section 81 of article 5-a of the General City Law, at subdivision 4 of the said section, contains the following provision:

" Where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, the Board of Appeals shall have the power of passing upon appeals, to vary or modify any of its rules, regulations or provisions relating to the construction, structural changes in, equipment or alteration of buildings or structures, so that the spirit of the ordinance shall be observed, public safety secured and substantial justice done."

It is apparent that the wording of the ordinance does not conform in all particulars with the wording of the above quoted provision of the statute. The board of appeals has of course all the powers granted by the statute; and if it could be urged that its powers were limited to those granted by the statute, and that, therefore, the broader language of the Zoning Ordinance in question granted powers beyond those authorized by statute, still this provision was a part of the Zoning Ordinance as originally adopted and is impressed upon the provisions of the ordinance classifying the restricted areas and is as much a part of them as if it had been read into each one of them; and I can see no reason why it was not clearly within the power of the municipality to grant this power to the board of appeals, as a limitation upon the apparent restrictions themselves. I, therefore, think that the decisions construing an identical provision in the Building Zone Resolution of the City of New York are in point. It is, therefore, unnecessary here to pass definitely upon the question whether this provision of the statute grants to the board of appeals the power to vary the restrictions upon a district. I am of the opinion, however, that the provision should be liberally construed and that it would be of little practical value unless the Legislature intended to grant to a board of appeals the power to do what in the instant case was done.

It is apparent that zoning regulations whereby the freedom of action of an owner in dealing with his own property is limited, outside of the field of nuisance, in their very nature raise grave constitutional questions as to whether inherent rights are not in a particular case violated. There is, of course, no constitutional

basis for sustaining a zoning ordinance, as such, unless it may be shown to have been enacted in the interests of public health, public safety, or general welfare; and of course, when constitutional rights are threatened, rules which tend to destroy these rights must be carefully considered and strictly construed.    It was a recognition of this situation which led to the incorporation in zoning ordinances of provisions for boards of appeals, to the end that, prior to the time when the questions of constitutional rights were brought in question before the courts, there should be given to the subject consideration by a body presumably expert in passing upon the questions of fact involved.

In the case of *People ex rel. Sheldon* v. *Board of Appeals* (234 N. Y. 484, 493) the Court of Appeals used this language: " A review of the several laws enacted clearly indicates that the legislature appreciated the far-reaching effect of any law bearing upon the subject of a division of the city into zone districts as affecting the constitutional rights of citizens in the use of their property and so far as possible with a view of protecting such rights concluded that the delegation of power to be conferred by it upon the board of estimate and apportionment, to adopt regulations for the use to which property might be adapted, should be limited to the adoption of regulations designed to promote public health, safety and general welfare, the conservation of property values, the suitability of each district for particular uses and the enhancement of the value of the land throughout the city."    This was in reference to the creation of a board of appeals in the city of New York by the board of estimate and apportionment of said city.

I have already expressed the view that the subdivision of the Zoning Ordinance under consideration is a proper and controlling provision.    It is true that the effect of its operation, in specific cases, may be to vary the restrictions provided for a particular area, with the effect of making, so far as the specific case is concerned, what might amount to a reclassification; but there can be no objection to this, for that is the very intent and purpose of the provision, " where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of the ordinance." The creation of a board of appeals with discretionary powers to meet specific cases of hardship or specific instances of improper classification is not to destroy zoning as a policy, but to save it.    The property of citizens cannot and ought not to be placed within a straitjacket.    Not only may there be grievous injury caused by the immediate act of zoning, but time itself works changes which require adjustment.    What might be reasonable to-day might not be reasonable to-morrow.    If in any zoning ordinance there is not

created a board of appeals with the broad powers provided in the statute and in this zoning ordinance and under which serious injuries to private rights occasioned by reason of peculiar conditions or improper zoning can be avoided, the courts, bound by the duty to protect individuals from invasion of their constitutional rights, would develop a line of decisions which by reason of their number and character might eventually destroy the policy of zoning itself. Through the wise action of a proper board of appeals, exercising broad powers and possessed of expert knowledge as to the general plan and purpose of the zoning ordinance of a city, the inequalities and injustices resulting from a strict enforcement of a general zoning ordinance will in most instances be avoided; the board in this respect acts with something of the ancient powers of a court of equity in a field where the law by reason of its generality works an injustice.

This power on the part of a board of appeals would not justify it in acting arbitrarily or as a matter of favor in setting aside or modifying the effect of a zoning ordinance, as to a particular piece of property; but the intent of the statute is clear that it must exercise sound judgment, and only " where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter " of the ordinance. And then again, the board is limited in its power to a specific case, and to an action in harmony with the general purpose and intent of the zoning ordinance, so that the public health, safety and general welfare may be secured and substantial justice done. Furthermore, the board of appeals would have to act without motives of favor or prejudice, and with proper motives.

I have carefully examined the return in this case. There is not the slightest attack upon the good faith of the board of appeals; it acted in the best of good faith, after careful deliberation, and in accordance with its powers. I do not feel that there is any ground whatsoever to disturb its judgment in this particular case; on the contrary, I am satisfied that if its decision had been other than what it was it would have been the duty of the court to have set its action aside and ordered the permission granted to the parties involved to construct the garage. The questions arising before boards of appeals under zoning ordinances are largely addressed to discretion, and in the absence of proof of an abuse of discretion the courts will hesitate to set aside deliberate determinations of questions within the powers of such boards.

I am fortified in my views in this matter by certain decisions of the courts of this State. (*People ex rel. Facey* v. *Leo*, 110 Misc. 516; affd., 193 App. Div. 910; 230 N. Y. 602; *People ex rel. Sheldon*

v. *Board of Appeals*, 234 id. 484; *People ex rel. McAvoy* v. *Leo*,
109 Misc. 255; *People ex rel. Beinert* v. *Miller*, 188 App. Div. 113;
*People ex rel. Healy* v. *Leo*, 194 id. 973; *People ex rel. Smith* v. *Walsh*,
211 id. 205.)

The writ or order of certiorari should be dismissed and the deter-
mination of the board of appeals should be sustained.

Ordered accordingly.